**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**JUDITH SCHUUR,** individually and on behalf of others similarly situated,

Plaintiff,

v.

**BODUM USA, INC.**,

Defendant.

Case No. 3:26-cv-50522

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Judith Schuur ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This is a consumer class action arising out of Defendant Bodum USA, Inc.'s ("Defendant" or "Bodum") design, manufacture, distribution, and sale of approximately 5.9 million defective French press coffee makers with 8-cup and 12-cup replaceable glass carafes (Bistro, Brazil, Caffettiera, Chambord, Crema, Java, Jesper, and Kenya models) ("Products").[1]

2. The Products can unexpectedly break during use, as the glass carafe is susceptible to cracking or breaking from ordinary contact with metal utensils, including when using a metal spoon to stir coffee, posing a risk of serious burn injuries ("Defect").[2]

---

[1] Plaintiff reserves the right to amend the complete list of the Products included in this lawsuit as information arises through discovery.

[2] *See* U.S. Consumer Product Safety Commission, *Bodum USA Recalls 5.9 Million French Press Coffee Makers with Replaceable Glass Carafes Due to Risk of Serious Burn Injury* (Oct. 29, 2026), https://www.cpsc.gov/Recalls/2027/Bodum-USA-Recalls-5-9-Million-French-Press-Coffee-Makers-with-Replaceable-Glass-Carafes-Due-to-Risk-of-Serious-Burn-Injury (last accessed Oct. 29, 2026) (describing the hazard associated with the recalled Products, including the risk of glass carafe breakage resulting from damage caused by stirring coffee with a metal spoon).

3. Bodum knew of this Defect through various complaints and reviews, including 70 reports of carafes breaking during use and 48 reports of burns to consumers. Still, these coffee makers were advertised and sold across the United States without adequate warnings or safeguards to prevent burn injuries.

4. Bodum's recall acknowledges this issue but fails to provide any mechanism to remediate the Defect adequately.[3] Bodum advised Consumers to immediately stop using metal spoons or utensils to stir coffee in the glass carafe and to contact Bodum to receive a plastic Bodum stirring spoon and a warning label.[4]

5. The Recall fails to offer ***any monetary relief*** to the Plaintiff and Class Members who purchased the defective Products. Rather than providing a proper remedy, such as a full refund or product repair, Bodum merely supplies customers with an inadequate stirring spoon and warning label. As a result, Plaintiff and Class Members are left with defective Products that continue to pose a serious risk of burn injuries, while Bodum retains the full purchase price without providing any meaningful compensation for the defective Products it sold.

6. The hazardous nature of the Product and propensity for harm from the Products makes a full refund the proper method of recall.

7. Based on Defendant's labeling, packaging, and marketing materials, omissions, and Bodum's reputation as an expert on coffee makers, Plaintiff reasonably believed the Products did not suffer from the defect and did not pose safety risks to themselves and others in their households.

8. Defendant's failure to disclose this defect at the time of sale ("Material Omissions") violates the laws asserted below. Plaintiff and Class Members would not have purchased the Products or would have paid significantly less had they known of the risk of breakage and serious

[3] *Id.*
[4] *See* Defendant Website, https://www.bodumfrenchpressrecall.expertinquiry.com/ (Last accessed October 30, 2026)

burn injuries.

9. This action seeks damages and equitable relief, including remediation funding for all affected Class Members.

10. Defendant's negligent conduct, including its failure to exercise reasonable care in the design, manufacture, and testing of the Products, as well as its failure to adequately warn consumers of the Defect, caused harm to Plaintiff and Class Members, while Defendant unjustly retained financial benefits from the sale of the defective Products.

## FACTUAL BACKGROUND

11. Defendant is a houseware and kitchenware manufacturer famous for its Scandinavian design aesthetic and coffee/tea makers. Defendant claims its mission is to "create great designs at affordable prices in line with our guiding principle of '***form follows functionality***'"[5] (emphasis added).

12. On October 29, 2026, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 5.9 million Bodum French press coffee makers due to "break during use if the glass carafe is damaged or cracked, including by use of a metal spoon to stir the coffee, posing a risk of serious burn injuries."[6]

13. The recall includes the following Bodum coffee makers sold under the Bodum Balsan name: Bistro, Brazil, Caffettiera, Chambord, Crema, Java, Jesper, and Kenya models.[7]

---

[5] *See* Defendant's Website, https://www.bodum.com/ca/en/about (Last accessed October 29, 2026).

[6] *See* Recall No. 27-055, https://www.cpsc.gov/Recalls/2027/Bodum-USA-Recalls-5-9-Million-French-Press-Coffee-Makers-with-Replaceable-Glass-Carafes-Due-to-Risk-of-Serious-Burn-Injury (Last accessed October 30, 2026)

[7] The Model numbers affected include the following: **Bistro** (1508-137B), **Brazil** (1548-01US, 1548-01WM, 1548-294US, 1552-01US, 11030-01US4, 10938-01B / K10938-01US / D10938-XYB, 10938-294B, 10938-913B, 10938-04B), **Caffettiera** (1918-01, 1918-01BUS, 1918-01LI-SET, 1918-913US, 1918-913CHA-10, 1918-01B-1, 1918-538, 1918-539, 1918-540, 1918-738B, 1918-873B-1, 1918-873B, 1918-733US, 1918-751-761, 1918-170-761, 1918-746-761, 1918-760-761, A1918-XYB-Y21-1, 1918-978B-Y18, A1918-XYB-Y18-1, A1918-XYB-Y18-2, 1918-981B-Y18-9, 1918-338B-Y19, A1918-XYB-Y19-1, 1918-339B-Y19, 1918-340B-Y19, 1918-695-367-MOMA, 1918-852-294-MOMA, 1918-763-MOMA, 1918-860-1-MOMA, 1918-558-MOMA, 1918-530-531NPR, K1918-01TG, K1918-561-MOMA, DA1918-XYB-ALDI)**, Chambord** (1928-16US4 / 1928-16B / 1928-16SB / 1928-16US6, 1928-18B / 1928-18SBR / 1928-18TG, 1928-57BUS / 1928-57 / 1928-57B, K1928-57US-1, 1928-01, 1928-17B / 1928-17, 1928-913 / 1928-913B-1, 1928-380B,

14. The CPSC disclosed that the company received at least "70 reports of carafes breaking during use, including 48 reports of burns to consumers."[8]

15. The affected Products were sold nationwide at retailers including Target, Walmart, and various coffee and home goods stores, as well as online through Bodum.com, Amazon.com, and other retailers' websites. The Products were sold from 1974 through October 2026, at prices ranging from approximately $15 to $65.[9]

16. Despite this disclosure, Bodum's purported remedy consists solely of providing consumers with a plastic stirring spoon and a warning label. Defendant offers neither a replacement product, a full refund, nor a repair addressing the Defect. Instead, consumers are left with defective Products that continue to pose a risk of serious burn injuries, while receiving merely a stirring spoon and a warning label cautioning them about the very Defect the Recall purports to remedy. Nor is there any evidence that these measures effectively eliminate or adequately address the Defect.

17. Defendant's recall fails to provide Plaintiff and Class Members with any meaningful remedy for the defective Products, offering only a plastic stirring spoon and warning label rather than a refund, replacement, or repair addressing the Defect. As a result, Plaintiff and Class Members are left with Products that continue to pose a risk of serious burn injuries, without compensation for the diminished value of their purchases.

18. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing consumer products for "over 70 years,"

---

1928-224, 1928-109S, 1932-16US4 / 1932-16B, 11652-498WS, 11172-01, 11172-16 / 11172-16US, 11172-17, 11652-18, 11652-16-107), **Crema** (11522-003, 10883-01 / 10883-01US, K10883-01) **Java** (1908-01, 1908-01B, 1908-294, 1908-294B, 1908-450B, 1908-538B, 1908-539B, 1908-911B, 1908-913B, K1908-01), **Jesper** (1927-259BUS, 1927-16 / 1927-16BUS), **Kenya** (M10930-01-10, M10685-01-10 / 10685-01B / 10685-01US, 11751-16WM, 1788-539BTG, DK11751-16WM, K1788-01/ K1788-01US-1)

[8] https://www.cpsc.gov/Recalls/2027/Bodum-USA-Recalls-5-9-Million-French-Press-Coffee-Makers-with-Replaceable-Glass-Carafes-Due-to-Risk-of-Serious-Burn-Injury (Last accessed October 30, 2026).

[9] *Id.*

including producing and manufacturing the recalled Products.[10]

19. Defendant is in the unique and superior position of knowing the means by which its Products are manufactured and the steps needed to produce safe Products.

20. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.

21. Indeed, Defendant designed, manufactured, and tested the Products and should have been aware that the Products contained the Defect.

22. Defendant should have known of the Defect through its design, manufacturing, and testing processes, particularly in light of the consumer complaints it received concerning the Defect. Indeed, Defendant received at least 70 reports of glass carafes breaking during use, including 48 reports of consumers suffering burn injuries. Despite these reports, this information was not publicly available to Plaintiff and Class Members. Rather, information concerning the Products' design, manufacturing, testing, warranty claims, and consumer complaints remained within Defendant's exclusive possession and knowledge.

23. Moreover, Bodum was aware of the Defect through consumer complaints submitted to the CPSC.

24. The CPSC forwards consumer complaints of product safety hazards to manufacturers after receiving and reviewing them, thereby providing manufacturers with notice of potential defects in their products.[11]

25. Unlike Defendant, Plaintiff and Class Members had no reasonable means of discovering that the Products were susceptible to breaking during ordinary use, posing a risk of

---

[10] *See* https://www.bodum.com/us/en/history (Last accessed October 30, 2026).

[11] FAQs, Saferproducts.gov, https://www.saferproducts.gov/FAQs/FrequentlyAskedQuestions2#item2-1 (accessed October 29, 2026).

serious burn injuries. Information concerning the Defect was not readily accessible to consumers, nor could the Defect reasonably be discovered through an ordinary inspection of the Products before purchase. Indeed, reasonable consumers are not expected to conduct independent product testing or extensive research to uncover undisclosed safety hazards before purchasing a French press coffee maker. Accordingly, Plaintiff and Class Members neither knew nor reasonably could have known of the Defect at the time of purchase.

26. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in the design, manufacture, testing, marketing, and sale of the Products, including a duty to adequately warn consumers of known or reasonably foreseeable safety risks associated with their intended use.

27. Defendant knew or should have known that the Products were susceptible to cracking or breaking during ordinary and foreseeable use, including when consumers used metal utensils to stir coffee, thereby exposing consumers to an unreasonable risk of serious burn injuries.

28. Despite its knowledge of the Defect, Defendant failed to adequately disclose or warn Plaintiff and Class Members of the risks associated with the Products. This information was material to consumers because it directly concerned the safety, reliability, and intended use of the Products.

29. Defendant failed to exercise reasonable care by continuing to manufacture, market, distribute, and sell the Products without adequately addressing the Defect or providing sufficient warnings regarding the risks associated with their use.

30. Plaintiff and Class Members reasonably expected that the Products were safe for their ordinary and intended use and were unaware of the Defect and the associated risk of serious burn injuries at the time of purchase.

31. Had Defendant adequately disclosed the Defect and the risks associated with the

Products, Plaintiff and Class Members would not have purchased the Products or would have paid significantly less for them.

32. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered economic harm in that they:

a. Paid money for Products containing an undisclosed safety Defect;

b. Paid more for the Products than they would have had the Defect been disclosed;

c. Were deprived of the benefit of their bargain because the Products were not reasonably safe for their ordinary and intended use; and

d. Purchased Products worth less than the amount they paid because of the undisclosed Defect.

33. Defendant benefited financially from the sale of the defective Products and retained revenues derived from Plaintiff's and Class Members' purchases, despite failing to disclose or remedy the Defect adequately.

**JURISDICTION AND VENUE**

34. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Illinois, and Defendant is headquartered in New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

35. This Court has personal jurisdiction over the Defendant because the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed, and/or sold the Products, committed a statutory violation within Illinois related to the allegations made herein, and caused

injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant period. At that time, Defendant was engaged in business activities in Illinois.

36. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Product in this District. Venue is also proper because Plaintiff resides in this District.

## PARTIES

***Plaintiff Judith Schuur***

37. Plaintiff Judith Schuur is a citizen and resident of Rockford, Illinois. In or around July 2024, Plaintiff purchased the Bodum French press coffee maker, the Bistro model, for approximately $22.00 at a Walmart store in Rockford, Illinois.

38. Plaintiff read and reasonably relied on Defendant's Product packaging, labeling, representations, and omissions at the point of sale. Based on Bodum's labeling, packaging, and marketing materials, the Material Omissions, and Bodum's reputation as an expert on coffee makers, Plaintiff reasonably believed the Product did not suffer from the Defect and did not pose safety risks to herself and others in her household.

39. Plaintiff purchased the Product and used it for its intended use of safely making coffee.

40. At no time was Plaintiff warned that the glass Product could unexpectedly break and pose a risk of serious burn injuries.

41. Plaintiff would not have purchased the Product or would have purchased it for much

less had he known of its dangerous propensity for burn injuries. As such, Plaintiff was injured at the point of sale.

42. Plaintiff is not made whole by Defendant's inadequate recall and has lost the benefit of the bargain by Defendant's misrepresentations and Material Omissions and failure to fully refund the Product.

***Defendant Bodum USA, Inc.***

43. Defendant Bodum USA, Inc. is a New York Corporation, which has its principal place of business at 45 E 20th St 8th FL, New York, NY 10003 and is a resident and citizen of New York.

44. At all relevant times hereto, Defendant has designed, built, manufactured, distributed, promoted, and/or marketed and sold the Products under various Balsan names nationwide, including in Illinois.

**ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

45. Plaintiff and the Members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Products.

46. Neither Plaintiff nor any other Members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and Members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in this conduct. For these reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiff and the Class.

47. Further, by failing to provide notice of the risks of health and safety concerns from burn injuries associated with the continued use of the Products, Defendant concealed its conduct,

and the existence of the claims asserted herein from Plaintiff and the Class Members.

48. Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class Members. Plaintiff and Class Members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class Members should be tolled.

## CLASS ALLEGATIONS

49. Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following classes:

**Illinois Class**:

> All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("Illinois Class").

**Multi-State Consumer Protection Class**:

> All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("Multi-State Class").[12]

50. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local

[12] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, et seq.). Plaintiff has standing to represent the proposed Multi-State Subclass. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

52. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's conduct.

53. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, negligent or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant failed to adequately warn Plaintiff and Class Members of the Defect and the risks associated with the Products;

d. Whether Defendant was unjustly enriched by retaining revenues from the sale of the defective Products;

e. Whether Defendant failed to exercise reasonable care in the design, manufacture, testing, marketing, and sale of the Product; and

f. Whether Plaintiff and the Class are entitled to money damages under the same

causes of action as the other Class Members.

54. Typicality: Plaintiff is a Member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every Member of the Class was subjected to Defendant's common course of conduct concerning the design, manufacture, marketing, sale, and failure to warn consumers of the Defect adequately. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

55. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members she seeks to represent, her consumer claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

56. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's negligent marketing and labeling practices.

57. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual

actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of claims arising from Defendant's negligent conduct and the defective nature of the Products.

58. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
### (On behalf of Plaintiff and the Multi-State Consumer Protection Class.[13])

59. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Plaintiff brings this Count on behalf of herself and the Multi-State Consumer Protection Class against Defendant.

61. The Consumer Fraud Acts of the States in the Multi-State Consumer Protection Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. California (Cal. Bus. & Prof. Code § 17200 et seq.);

b. Florida (Fla. Stat. § 501.201 et seq.);

c. Illinois (815 ILCS 505/1 et seq.);

d. Massachusetts (Mass. Gen. Laws Ch. 93A et seq.);

e. Michigan (Mich. Comp. Laws § 445.901 et seq.);

f. Minnesota (Minn. Stat. § 325F.67 et seq.);

g. Missouri (Mo. Rev. Stat. § 407.010 et seq.);

h. New Jersey (N.J. Stat. § 56:8-1 et seq.);

i. New York (N.Y. Gen. Bus. Law §§ 349, 350); and

j. Washington (Wash. Rev. Code § 19.86.010 et seq.)

62. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

[13] Plaintiff reserves the right to amend this list of states after discovery.

63. Defendant's uniform labeling and marketing representations and Material Omissions of the Product were deceptive and materially misleading.

64. Given Defendant's leading position in their industry, Plaintiff and reasonable consumers trusted and relied on Defendant's representations and Material Omissions, sustaining damages in an amount to be proven at trial.

65. In addition, Defendant's conduct showed malice, motive, and/or reckless disregard for the truth, so an award of punitive damages is appropriate.

66. Plaintiff and the other Members of the Multi-State Consumer Protection Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Consumer Protection Class because Plaintiff and Members of the Multi-State Consumer Protection Class have suffered an injury in fact and lost money because of Defendant's actions set forth herein.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 et seq. ("ICFA")
**(On behalf of Plaintiff and the Illinois Class)**

67. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Plaintiff brings this cause of action on behalf of herself and the Illinois Class Members against Defendant.

69. Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

70. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

71. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

72. Plaintiff and the proposed Class are "consumers" who purchased the Products for

personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

73. The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

74. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

75. Defendant's conduct as alleged constitutes unfair and deceptive acts and practices violating the ICFA. Defendant engaged in deceptive marketing by misrepresenting and omitting material facts regarding the Product's safety. The representations and Material Omissions were likely to mislead a reasonable consumer.

76. Plaintiff and the other Illinois Class Members reasonably relied upon Defendant's Representations, labeling, and omissions alleged herein.

77. Defendant's misconduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, violating 815 ILCS 505/1 et seq., by representing that the Product has characteristics or benefits that it does not have.[14] Defendant also did not intend to sell the products as advertised, in violation of 815 ILCS 505/2 and 815 ILCS 510/2(9).

78. Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(3).

79. Defendant's uniform marketing representations and Material Omissions were

[14] *See,* 815 ILCS § 505/2; 815 ILCS § 510/2(7).

deceptive and materially misleading. Defendant named and labeled the Products in a way that would most strongly influence consumer choices and increase market share. Defendant knew that consumers purchasing the Products would reasonably understand the Products were safe to use.

80. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Class Members have suffered ascertainable money losses caused by Defendant's representations. Had they been aware of the true nature of the Products, Plaintiff and Class Members would have paid less for the Products or would not have purchased them.

81. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class Members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

82. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83. Plaintiff, on behalf of herself and the Class, brings a claim for unjust enrichment.

84. Defendant's conduct violated, *inter alia*, state law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

85. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

86. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented it

to be.

87. Accordingly, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

88. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments so that Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, restitution damages and treble damages;

(c) Awarding Plaintiff and Class Members restitution and/or disgorgement of benefits unjustly retained by Defendant, to the extent permitted by applicable law;

(d) Awarding Plaintiff and Class Members appropriate equitable and injunctive relief, to the extent available under applicable law;

(e) Awarding Plaintiff and Class Members pre-judgment and post-judgment interest as permitted by law;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

**Dated:** October 31, 2026

Respectfully Submitted By:

**LAUKAITIS LAW LLC**

/s/ Kevin Laukaitis
Kevin Laukaitis
Andreas Moffett*
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 559-6072
Email: klaukaitis@laukaitislaw.com
Amoffett@laukaitislaw.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*
*and the Putative Classes*